Cartjthers, J.,
delivered tbe opinion of tbe court.
This bill is filed for divorce from tbe bonds of matrimony. It is based upon tbe 19tb sec. of tbe act of 1835, cb. 26, as amended by tbe act of 1841, cb. 133, § 1. Tbe grounds of divorce from bed and board, by tbe former act, are made causes for tbe dissolution of tbe bonds of matrimony at tbe discretion of tbe court by tbe latter, and are:
1. Sucb “cruel and inhuman treatment or conduct” on tbe part of tbe husband, as renders it unsafe and improper for tbe wife to cohabit with him, and to be under bis dominion and control:
2. “Sucb indignities offered to her person as to render her condition intolerable, and thereby force her to withdraw.”
3. Tbe abandonment of her, or turning her out of doors, and refusing or neglecting to provide for her.
Tbe addition thus made, by tbe act of 1841, to tbe eight or nine grounds, of absolute divorce which before existed, and tbe indefinite and undefined character of tbe new causes allowed, have crowded tbe courts with these applications. Tbe facility with which tbe solemn contract of matrimony is now dissolved, is just cause of alarm in tbe minds of those who put a proper estimate upon this institution. This should be regarded by all, as tbe most important of tbe domestic relations. It *719 involVes tbe greatest happiness of individuals, and the best interests of society. It may be well doubted, whether without it, civilization could exist, or the peace and harmony of society be maintained. All Christian States regard this relation as essential to their well being and permanency.
There is, however, a great diversity in different States in the laws of divorce. In one, if not more of our sister States, it is said that a divorce has never been granted, either by the courts, or the legislature, in others only for adultery, but in most of them the causes have been multiplied, and perhaps in none more largely than in our own State. As to the policy of those laws, in view of their effect upon the parties, their offspring, and society, much conflict of opinion exists. Some contend that the individual misery produced by unhappy matches, and the inhumanity of cruel husbands, and unfaithful wives, had better be endured than to allow the bonds to be dissolved for any cause; others again contend, that for any serious disagreement, or palpable incongruity of temper or disposition, the cords should be sundered, and the parties set free. There is every shade of opinion on this subject, but it is to be presumed that the views of a majority of our citizens are embodied in our legislation. But it is believed there can be no sort of doubt but that the very enlarged, and as we think, unwarrantable construction frequently given to the 19th section of our act of 1835, in practice by many of the inferior courts, has been productive of very great mischief to families, the cause of morality and religion, and the best interest of the public. It is true, that the grounds laid by the legis *720 lature are so broad, and indefinite, that it is difficult to lay down any rules by which the discretion given to each judge can be guided or circumscribed.
The application of the provisions of law to any particular case, as it would seem, depends upon the opinion the presiding j’udge or chancellor may entertain of the propriety of conduct, refinement of manners and language, equanimity of temper, respectful deportment, and the degree of indulgence, which should characterize the husband in his intercourse with his wife. There can be no uniformity in the decisions under this latitudi-nous construction. The standard by which each judge will decide, must depend upon his own taste and particular views on this subject. Any deviation from that on the part of the husband, may in his estimation, render the condition of the wife “intolerable.” Want of congeniality in taste, temper and habits, or mutual dislike, resulting from that or any other cause, constitute, as some judges seem to think, a good ground for a legal severance of the matrimonial relation. To this extent many have gone, at least in their theories, upon the ground that the condition of the wife is rendered “intolerable.” Surely the legislature never intended to make so fragile, the cords which bind husband and wife together. If it be so, there is no stability in this relation, and upon the least discontent, a case can be made out for a divorce without any difficulty. The wife may not make any effort to adapt herself to the feelings, interest, and habits of her husband, but in order' to make her situation happy and tolerable, he must adapt himself to her peculiar temper and habits, and at all times keep so strict a guard' upon his tongue *721 and conduct, as to give ber no offence, because this would be a personal “indignity” that would “render her situation intolerable, and foree her to withdraw.”
In a large majority of such cases, if it were not for the fact that a divorce is so easily obtained, the little differences, resulting from unfortunate temper, sudden passion, or want of due consideration, or wrong notions of what is due from one to the other, would be reconciled, and the parties and innocent offspring saved from the reproach that is often brought upon the parents by the exposure B of these contests. The proof of this is to be found in the fact, that it is not uncommon for the parties, after they have had time to get over the conflict of separation at home, and the contest at law, and review calmly the original causes of difference, and how easy it will be to avoid them in future, to re-marry and live together again in peace and harmony. Very often too, applications made in passion and excitement are abandoned, and under mutual concessions former relations restored never again to be interrupted. The temptations to enter the courts, and come before the public with every ■ little family difference, ought not to bo held out by too loose an exposition of the law.
There are many cases, however, to which the act under consideration very properly applies. They are sufficiently indicated by the very strong language used by the legislature. The conduct or treatment complained of, must be so Ueruel and inhuman,” as to mate it unsafe, for her to continue under his power and do minion; or such “indignities” offered to her person, as to render her condition so “ intolerable” that she is *722 '■'•forced to withdraw” from his house. This strong language is not intended to apply to cases where a wife permits herself to become very unhappy and dissatisfied with her condition, by magnifying the faults and indiscretions of her husband, brooding over imaginary wrongs, or indulging in a feeling of opposition to that authority and control which properly and necessarily belongs to him, as head of the family, and by yielding to the advice and counsel of others in preference to his. It could not have been intended, as it is inconsistent with the force of the words used by the legislature, that every fault or indiscretion, or even wrong, on the part of the husband, which owing to the greater refinement or peculiar taste and habits of the wife, or her advisers, caused her to feel that her situation was intolerable,” should be the ground of divorce. It must not only appear to the court that she felt she could not bear such treatment, or that she considered it “unsafe and improper” for her to continue under the control and dominion of her husband, but it must appear from the facts, that the causes set forth in tfie statute, really existed for such feelings and conclusions: That is, the wrong complained of, must be “cruel and inhuman,” or the “indignity” to her person so great, as to force her to withdraw from him, because her condition is not to be endured, in consequence of such mal-treatment.
In the case of Payne vs. Payne, 4 Humph., 500, so often referred to and relied upon in these cases, the court say, “He is in the habit of using language to her, which a gentleman will not employ to his slaves; he threatens to drive her from, his house; he slaps and *723 chokes her; and at the family altar, in her presence, he prays God to deliver him from her, &c. We think, npon all the facts of this case, the plaintiff is entitled to a decree of divorce from the bonds of matrimony.” So we think, beyond all question. There was an accumulation of habitual insult, personal violence, and an impious wish and desire for her death, uttered at the altar of prayer. Surely, under these circumstances, she had a right to consider herself unsafe, and must have been miserable whilst under his power and control.
It remains to be seen whether the facts of the case before us are sufficient, under a fair construction of the broad provisions of this act, to authorise a divorce. The circuit judge thought not, and dismissed the bill. •
The general charges of the bill, as well as the specifications under them, are all denied by the answer, or admitted with qualifications. Some are sustained by the proof, and others not. Enough, however, is established against the' defendant, to show that he has-not at all times been mindful of his duty to his wife. Much coarseness of manner and language, with inexcusable roughness of temper and treatment, have char-acterised his intercourse with her at .times. He has permitted himself to indulge in rude abuse towards her family and relations, making reflections upon them of a character most disreputable to himself, and unworthy of a gentleman. On both sides, irascibility of temper; and unrestrained passions have been displayed, which' were well calculated to destroy that happiness, 'and domestic peace, which matrimony is designed and well calculated to produce. Neither of the parties have been faultless in this respect, but the course of both, highly *724 censurable. There has not been evinced, in their intercourse, that mutual confidence and respect, that allowance for each other’s infirmities, and charitable construction of conduct on both sides, calculated to secure mutual affection and peace. But on the other hand, the worst’ construction was placed on the conduct of each other,- and very small things magnified into consequence, by the eyes of jealousy, and suspicion improperly indulged. It is highly probable, too, that wrong counsels have been given, and discontents fomented by the interference of the families of each party. Much mischief may have been, and often is done in this way, and frequently without any evil intention, but under a misdirected friendship and care for the respective parties. There is too much reason to believe, in this case, that the unhappy state of things between this young couple, resulted from this kind of malign influence, and ill-judged interference. "We find that the proof comes mainly from the two sides of the house, and has its hue and complexion, accordingly. But still, it cannot be disguised, that the defendant has, in many things, acted very disgracefully, and deserves strong reprobation and reproach. His conduct has, in many instances, been such as to consign him to the censure and. condemnation of all correct thinking men. He has at times been indelicate in his language, and rough in his treatment to her. She has not, however, been at all times faultless, and not unfrequently inflamed, instead of endeavoring to allay his passions.
They lived together but little more than a year. She left him, and went off to her parents, soon after she recovered from her confinement. In their brief *725 matrimonial career, she charges him with the following instances oí cruel, inhuman and intolerable treatment.
1. In about two weeks after they were married she proposed to go on a visit to her parents, living a short, •distance off, and he got into a passion about her leaving home so often, and foolishly told her, with an oath, “that he did not care if she went and staid a thousand years.”
2. He refused to let her go with her sister to a camp meeting, sis or seven miles off, in a rude and positive manner, upon the grounds that it would be indelicate and unsafe in her situation at that time, which the sister' thought a false ground, and perhaps it was.
3. He gave her no money, and only two calico dresses while she lived with him. This was mean and penurious, as he was worth some three or four thousand dollars in property, and this was well known to complainant, as is alleged, before the marriage, and it is strongly insinuated was not without its influence upon her in entering into the alliance.
' 4. He abused her relations, and charged them with being drunkards, and living upon him, and intimated that she was guilty of aiding them with his money and' other things. ' This was certainly most disgraceful conduct, and not at all. excuseable in him, no matter what her' course may have been, or how much his passions may have been excited by them, or her. There is no proof that the charge was true, as to his money or property, in a sense to affect her character for honesty; nor is the proof very satisfactory that he ever made the charge so broadly.
5. His mother, with whom and his sisters, the par *726 ties lived, carried the keys, and complainant was not honored with that emblem of domestic authority and confidence. But the mother-in-law was the owner of the house and land, for life, and would of course only give up her authority with her last breath. Nothing but death would or should be required to part her and the keys.
6. He threatened to choke her, and would have done so, but for her retreat, and on another occasion drew back, or strongly threatened to strike, or whip her, but did not in either case do any actual violence. The proof leaves the attending circumstances of these charges, rather uncertain, but no actual violence is charged, at the time of the threat to strike or whip her, ’ and the proof makes it probable that she had very much provoked him at the time.
This catalogue of charges, and perhaps some others of the same character, some proved and others not, long as it is, and disreputable as it may be to the defendant, are not sufficient, in our opinion, to authorize the dissolution of the bonds of matrimony under a fair construction of our acts of assembly on that subject.
Though there is certainly much to condemn in his conduct, yet it was not of that character contemplated by the statutes, to authorize the rupture by judicial hands of the bonds by which they were bound together. Her character for amiability is proved to have been good before marriage, and his temper was bad and needed much control and amendment. The agreement made at the altar, to take each other for better or for worse, and to cleave unto each other until separated by .death, required that much should be borne, and every *727 possible effort made by both to overcome all obstacles to their happiness. Separation should be the last resort, and never to be thought of while any means of reconciliation remained to be tried. From what we see in this case, it does not appear to us that the complainant, any more than the defendant, has done her duty to accomplish the object of their union, and avoid the catastrophe which has happened. She may have made a bad selection of a husband, but this is her misfortune, and the courts cannot release her until a case, provided for by the statute, is made out. It was never intended that the single fact, that the parties became dissatisfied with each other, should constitute a ground of divorce. Such a principle would be ruinous to society. It may sometimes happen that justifiable cause for separation may exist, which would still be insufficient upon correct policy to authorize a dissolution of the bond of matrimony. With those hind of cases we have nothing to do — they raise questions of conscience and morals. The courts are confined to the cases provided for in the statutes, and are forbidden by every consideration of duty and public policy, to go beyond them; they are surely sufficiently numerous in our State.
This unfortunate couple were badly situated to make a fair experiment of their adaptedness to each other. The families on each side, were not as cautious as they should have been in avoiding all improper interference, and affording the proper counsel and advice. It is not improbable, that for one reason or another, though perhaps, in some instances, without improper motives, they fomented the rising discontent, and promoted that *728 alienation- of feeling, which has resulted so fatally to the peace and happiness of both parties. It seems that the family of the complainant has opposed the overtures of the defendant for reconciliation and adjustment. No interview between the parties has been allowed for that purpose, though sought by the defendant. His advances have been rejected, though accompanied with an acknowledgment of" faults, and solemn promises of future amendment. It was a proper case for mutual concession and forgiveness. There is good reason to believe, that if these parties had been left to themselves, without any outside interference, or influence, that the present unhappy state of things would never have occurred. It is not improbable that this young couple were ill-advised as to the course their duty and happiness required them to pursue towards each other. We can see no sufficient reason why they should not again come together, forgetting the past, except so far as it may afford lessons for the future, and yet enjoy a long .life of peace and happiness.
We would not be understood as holding, that nothing short of personal violence would constitute a ground for divorce under our statute. We have recently held, that deliberate and repeated accusations of adultery against the wife, by her husband, without grounds, is a sufficient cause. What other circumstances of “ cruel and inhuman ” treatment or personal indignities, either by words or actions, would be -sufficient, need not now be considered, as each case must stand upon its own facts, and scope must be given in any construction, to meet such cases of cold blooded cruelty and barbarity on the. part of husbands towards dutiful *729 and innocent wives, which would he reasonably .calculated to render their condition intolerable or unsafe, as explained in a foregoing part of this opinion.
But we cannot, with our views of the law, the best interest of individuals, and the true policy of society, decree a divorce in the case under consideration. We \ therefore affirm the decree of his Honor, the circuit judge, and dismiss the bill. But as the defendant has acted very improperly, we will tax him with all the costs.